**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carolyn Merrill-Smith,<br><br>   Plaintiff,<br><br>v.<br><br>La Frontera Arizona Empact SPC,<br><br>   Defendant. | No. CV-16-02677-PHX-ROS<br><br>**ORDER** |

Plaintiff Carolyn Merrill-Smith ("Merrill-Smith") sued her former employer Defendant La Frontera Arizona EMPACT-SPC ("Frontera") under the Family and Medical Leave Act ("FMLA"). After one claim was dismissed, the only claim remaining is whether Frontera violated Merrill-Smith's FMLA rights when Frontera placed Merrill-Smith in the "pool" of workers who remained as employees but were not required to work a regular schedule rather than granting her FMLA leave. Frontera has now filed for summary judgment on that claim, and the Court will grant Frontera's motion.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed.[1] Frontera is a nonprofit

---

[1] Rather than clearly stating whether she disputes the facts set forth in Frontera's separate statement of facts, Merrill-Smith provided a controverting statement of facts which consists of a mix of facts and arguments. The Court disregards those facts which are immaterial to resolving this motion. The Court also disregards the arguments in the controverting statement of facts, as such arguments violate Local Rule of Civil Procedure 56.1(b). *Breeser v. Menta Grp., Inc., NFP*, 934 F. Supp. 2d 1150, 1154–55 (D. Ariz. 2013) (parties may not include explanations, inferences, or arguments supporting their position in the response to the statement of facts, because "[o]pinion, suggested inferences, legal arguments and conclusions are not the proper subject matter of a Local Rule 56.1 statement").

provider of comprehensive behavioral health services. In 2007, Merrill-Smith began working at Frontera in the full-time position of Crisis Hotline Therapist. The relevant events began in January 2013 when Merrill-Smith submitted a resignation letter.

On January 30, 2013, Merrill-Smith submitted a resignation letter which read, in full, "I, Carolyn J. Merrill-Smith, do hereby resign my position here at EMPACT-SPC. Thank you for all the excellent experience and overall support throughout the years[.] I apologize for any and all inconveniences[2] my personal life seems to have brought you this last year. I never meant any harm to anyone. Thoughtfully, Carolyn." (Doc. 69-2 at 9.) After discussing the situation with her supervisor, Denis Thirion ("Thirion"), who Merrill-Smith asked to give her a leave of absence or to transfer her to another department where she could continue working as a therapist to alleviate her "physical and mental health symptoms," Doc. 69-2 at 6-7, Merrill-Smith withdrew her resignation, with Frontera's approval, and continued to work as a Crisis Hotline Therapist in the same department. The Court finds Frontera to have been on notice that Merrill-Smith was experiencing symptoms of a mental health condition as of January 30, 2013.

Between January and August 2013, Merrill-Smith performed her Crisis Hotline Therapist job duties. (Doc. 69-2 at 12, Doc. 69-1 at 7.)  In June 2013 Merrill-Smith was recognized by Frontera management for doing good work, Doc. 69-2 at 14-16, and she agreed. (Doc. 69-1 at 18.) On June 30, 2013, Merrill-Smith's pay rate was raised from $17.26/hour to $21.63/hour. (Doc. 69-2 at 18.)

In August 2013, Merrill-Smith performed her job duties well enough to meet the minimum job requirements, although during her deposition she testified that she did so "very poorly," "with great, significant difficulty," and cried when she needed to answer the phone. (Doc. 69-1 at 8-9.) On August 13, 2013, Merrill-Smith submitted a second resignation letter. This letter read, in full: "I, Carolyn J. Merrill-Smith, do hereby resign my position at La Frontera Arizona, EMPACT-SPC. I would like my last day of

---

[2] During her deposition, Merrill-Smith explained that by "inconveniences" she meant the fact that Frontera was investigating her for allegedly abusing her stepdaughters. (Doc. 69-1 at 23.)

employment to be September 3, 2013. Respectfully, Carolyn J. Merrill-Smith." (Doc. 69-3 at 2.) Nowhere in the August 2013 resignation letter did Merrill-Smith either state she had a serious medical condition or request a leave of absence. Merrill-Smith did not get a medical certification or medical order for a leave in August 2013. No healthcare provider told Merrill-Smith at any time in 2013 that she was unable to perform her Frontera job duties.

After receiving Merrill-Smith's resignation notice, Thirion asked Merrill-Smith if she "want[ed] to stay on as pool?" (Doc. 69-3 at 4.) Merrill-Smith understood that a pool position required an employee to work a minimum of two shifts per month, and that she could be terminated for failing to work at least two shifts per month. On August 27, 2013, Merrill-Smith asked Alexandra Gregory ("Gregory"), another Frontera manager, if she could "take a couple of months before [she] took a [pool] shift." (Doc. 69-3 at 6.) Merrill-Smith does not recall verbally requesting a medical leave from either Thirion or Gregory, and she never went to Frontera's Human Resources Department to request a medical leave or to discuss her health conditions. During her deposition, Merrill-Smith stated that Gregory was aware that she "wasn't doing well" and alleged Gregory asked her if she "was specifically suicidal and offered [her] pool, because [she] had made it very clear on multiple occasions [she] needed time off, and [she] was no longer able to work." (Doc. 69-1 at 40.)

The parties dispute the primary reason Merrill-Smith wanted time off before working a pool shift but agree that the poor relationship between Merrill-Smith and her coworkers in the crisis department was, at a minimum, a contributing factor. Frontera cites to the portion of Merrill-Smith's deposition where she explained that she was "[a]bsolutely not able" to work with her then-current coworkers in her department, arguing that her primary reason for insisting on time off was because she did not want to work in the Frontera Crisis Department and not because she was unwell. (Doc. 69-1 at 49.) Merrill-Smith argues her reason for insisting on time off was "because she was in need of a medical leave and 'not able' to work due to complex trauma complicating existing medical

conditions." (Doc. 75 at 9.) In support, Merrill-Smith relies on her deposition, where she said that she was "[a]bsolutely not able" to work with her then-current coworkers, listed symptoms she was allegedly suffering including "anxiety[,] … depression, situational depression[,] … hyperventilization [sic][,] … tremors[,] … [and] the decrease and deterioration of [her] medical condition," and said that a transfer to another department would result in "a healthier environment with lower stress" because "discrimination and harassment were factors and escalating it and causing [her] health deterioration," although she added that her "health was the ultimate issue as far as [her] request for the leave and [her] request for a transfer outside of the crisis department." (Doc. 75 at 9, Doc. 69-1 at 34.)

Frontera agreed that Merrill-Smith could take months off from work even as a pool employee, and Merrill-Smith accepted the pool position at the same rate of $21.63/hour that she had received in her previous position as a full-time Crisis Hotline Therapist. While in pool status, Merrill-Smith did not work any shifts in September, October, or November 2013. Consequently, on November 22, 2013, Frontera asked Merrill-Smith to contact Thirion "to schedule a pool shift" by December 2, 2013, and "to have worked a shift" by December 9, 2013 to remain employed. (Doc. 69-3 at 10.) Merrill-Smith contacted Thirion on December 2, 2013, stating "I would like to maintain a Pool Staff position." (Doc. 69-3 at 15.) She continued that she had "needed time off for personal care," due to "the circumstances [she] had been working in," and noted that although she was "doing much better" she "would like some additional time prior to taking a shift." (Doc. 69-3 at 15.) Specifically, Merrill-Smith requested "the option of returning for a pool shift after the first of the year." (Doc. 69-3 at 15.) In this request for additional time off she did not mention a medical condition or request a medical leave.

Frontera agreed to additional time off, and gave Merrill-Smith through the end of January 2014 to work a pool shift. But Merrill-Smith did not work a shift in January 2014 and the evidence does not show that she contacted Frontera to request yet more time off or to explain her situation. In sum, Merrill-Smith did not work a single shift in the five months

from September 2013 through January 2014. After Merrill-Smith failed to return to work to complete a shift in January 2014, Frontera terminated her employment. Significantly, between August 2013 and January 2014, however, Merrill-Smith applied for jobs with at least three other employers: Gila River Health Care ("Gila"), Humana, and Maricopa Health. She interviewed for a Clinical Liaison position with Gila on September 17, 2013, while she was on pool status but not working any shifts with Frontera. And, had Merrill-Smith gotten the Gila job, she would have tried to do the job.

Merrill-Smith filed the present suit in 2016, asserting numerous claims against Frontera.  Eventually, Merrill-Smith was allowed to proceed on a single claim that Frontera interfered with her FMLA rights when it denied her an FMLA leave in August 2013, and instead placed her in the pool.

## LEGAL STANDARD

The moving party is entitled to summary judgment if the evidence, viewed in the light most favorable to the non-moving party, shows "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004); *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998). At summary judgment, the court cannot weigh the evidence nor make credibility determinations. *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1035 (9th Cir. 2005). The moving party initially bears the burden of proving the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321–25 (1986). To do so, "[t]he moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the non-moving party to demonstrate the existence of a factual dispute that might affect the outcome of the suit. *Saddiq v. Trinity Servs. Grp.*, 198 F. Supp. 3d 1051, 1055 (D. Ariz. 2016).

Regarding the evidence, the district court "need consider only the cited materials."

Fed. R. Civ. P 56(c)(3). Thus, "where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found" "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact." *Wyatt Tech. Corp. v. Smithson*, 345 F. App'x 236, 239 (9th Cir. 2009) (quoting *Carmen v. San Fran. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001)). That said, the district court may consider materials in the record not cited by the parties. Fed. R. Civ. P 56(c)(3).

## ANALYSIS

Previously. Merrill-Smith's claims were narrowed to whether Frontera violated Merrill-Smith's FMLA rights when Frontera placed Merrill-Smith in the pool in August 2013 rather than granting her FMLA leave. (Doc. 37.) Specifically, Merrill-Smith claims Frontera should have granted her twelve weeks of FMLA leave in August 2013, but instead placed her in pool status (requiring her to work two shifts per month), therefore violating her FMLA rights. But despite Frontera's rule that individuals in pool status work two shifts per month, Frontera granted Merrill-Smith an exception, for a total of five months of unpaid leave, after which she was allowed to return to her position. There is no genuine dispute of material fact that Merrill-Smith was not prejudiced by Frontera's actions, and accordingly her claim fails.

To establish a prima facie case of FMLA interference, pursuant to 29 U.S.C. § 2601 *et seq*, a plaintiff bears the burden of "establish[ing] that '(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled.'" *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014) (quoting *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011)). There is no dispute that, in August 2013, the first three elements were met.[3] With regard to the fourth element, although Merrill-Smith

---

[3] Given that Merrill-Smith was applying and interviewing for other jobs involving the same duties during her leave, it is not clear that she was "entitled to leave under the FMLA." That is, it appears Merrill-Smith may have been capable of performing her job duties. *See* 29 U.S.C. § 2612(a)(1)(D) (stating employee is entitled to FMLA leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee"). But because Frontera does not dispute this issue, the Court

- 6 -

never discussed a medical condition, requested medical leave, or received a medical certification or medical order for a leave in August 2013, "[e]mployees need only notify their employers that they will be absent under circumstances which indicate that the FMLA might apply: 'The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed [for a qualifying reason].'" *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1130 (9th Cir. 2001) (quoting 29 C.F.R. § 825.302(c)). Thirion was aware in January 2013 that Merrill-Smith was experiencing "mental health symptoms," Doc. 69-2 at 6-7, and believed that Merrill-Smith had become "increasingly paranoid" in the period between January 2013 and August 2013, Doc. 75-1 at 63. Also, Merrill-Smith testified that she believed Gregory was aware that she "wasn't doing well" and asked her if she "was specifically suicidal." (Doc. 69-1 at 40.) Taking the facts in the light most favorable to Merrill-Smith, the fourth element is met.

With regard to the fifth element, if an employer interferes with, restrains, or denies the exercise of any employee's FMLA rights, 29 U.S.C. § 2615(a)(1), the employer is liable for a variety of damages and equitable relief pursuant to 29 U.S.C. § 2617. But even if the fifth element is met, the FMLA "provides no relief unless the employee has been prejudiced by the violation … The remedy is tailored to the harm suffered." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); *see also Silver v. Corinthian Colleges, Inc.*, 571 F. App'x 577 (9th Cir. 2014) (affirming summary judgment where plaintiff "presented no evidence that she lost compensation or benefits, or otherwise suffered monetary losses, due to [employer's] failure to notify her" of her FMLA rights); *Rodriguez v. Bank of Am., N.A.*, No. 209-CV-1814-PHX-NVW, 2010 WL 2890219, at *5 (D. Ariz. July 21, 2010) (granting summary judgment where plaintiff, who was not able to return to work for many months, was not prejudiced). Thus, to survive summary judgment Merrill-Smith must point to evidence that she was prejudiced by the Frontera's alleged violation.

Assuming for present purposes that Merrill-Smith provided sufficient information to Frontera to indicate she was in need of FMLA leave, Frontera had an obligation to notify

need not address and resolve it.

Merrill-Smith of her eligibility to take such leave. 29 C.F.R. § 825.300 ("When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA–qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances."). It is undisputed Frontera failed to notify Merrill-Smith of her eligibility. But Merrill-Smith has not established or created an issue of fact that she suffered prejudice as a result.

The Ninth Circuit does not appear to have explored the requisite "prejudice" in this context in a precedential opinion.[4] In 2003, this Court noted an FMLA plaintiff "must show that she detrimentally relied on and was prejudiced by [an employer's] improper notice." *Farina v. Compuware Corp.*, 256 F. Supp. 2d 1033, 1056 (D. Ariz. 2003). Since that time, many circuit courts have reached the same conclusion. For example, the Fourth Circuit concluded "[p]rejudice may be gleaned from evidence that had the plaintiff received the required (but omitted) information regarding his FMLA rights, he would have structured his leave differently." *Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 302 (4th Cir. 2016). The First, Third, Fifth, Seventh, and D.C. Circuits have reached similar conclusions. *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 368 (7th Cir. 2020) (citing cases); *Dorsey v. Jacobson Holman, PLLC*, 476 F. App'x 861, 862 (D.C. Cir. 2012) (finding no prejudice where employee who never returned to work "provide[d] no record evidence whatsoever that she could have structured her leave differently"). This approach is consistent with the governing regulation. *Lutes*, 950 F.3d at 368 (citing 29 C.F.R. § 825.301(e)). Therefore, the Court concludes Merrill-Smith needed to point to evidence that she would have structured her leave differently had Frontera explicitly informed her that she was taking FMLA leave. Merrill-Smith has pointed to no such evidence.

Merrill-Smith was given five months off, during which time she applied for other jobs, and if she had been offered one of those jobs it appears she would have taken it. There

---

[4] *But see Fiatoa v. Keala*, 191 F. App'x 551, 553 (9th Cir. 2006) (affirming summary judgment because employee "cannot show any harm from [employer's] failure to give notice" where employee "would not have been able to return to work until well after her twelve weeks of FMLA leave expired").

is no indication that, had Frontera identified her leave as FMLA leave, Merrill-Smith would have behaved any differently. It is unclear whether Merrill-Smith was able to work during the five months off. Her applications and interviews for other jobs seem to indicate Merrill-Smith was able to work and simply had no intention of returning to Frontera to work. Under that view of the facts, Merrill-Smith was not prejudiced because she never intended to return. Alternatively, if Merrill-Smith was not able to work during the five months, that time far exceeded the amount of leave she was entitled to under the FMLA. Thus, even if Frontera had designated the leave as FMLA, Merrill-Smith's failure to return to work would have been a legal basis for her termination. *See Farina*, 256 F. Supp. 2d at 1056 (noting many courts have concluded "an FMLA plaintiff's inability to return to work at the end of a twelve-week period [can be] proof that the plaintiff did not detrimentally rely on any misrepresentations under the FMLA's notice provisions"). Under this view of the facts, Merrill-Smith was not prejudiced.

The facts in the light most favorable to Merrill-Smith establish she was entitled to FMLA leave and Frontera should have designated her leave as FMLA leave. But Frontera's failure to do so did not prejudice Merrill-Smith. Therefore, Frontera's motion for summary judgment will be granted.

Accordingly,

**IT IS ORDERED** Frontera's Motion for Summary Judgment (Doc. 68) is **GRANTED**. The Clerk of Court is directed to enter judgment in favor of Defendant and against Plaintiff.

Dated this 23rd day of April, 2020.

Honorable Roslyn O. Silver
Senior United States District Judge